UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NORTH AMERICAN DEER REGISTRY, INC., a Texas Non-Profit Corporation, <br><br>    Plaintiff, <br><br>v. <br><br>DNA SOLUTIONS, INC., an Oklahoma Corporation, <br><br>    Defendant. | § § § § § § § § § § § § § § | <br><br><br><br><br><br>Case No. 4:17-cv-00062-ALM <br><br>Jury Demanded |

**PLAINTIFF NORTH AMERICAN DEER REGISTRY, INC.'S
APPLICATION FOR PRELIMINARY INJUNCTION**

COMES NOW Plaintiff North American Deer Registry, Inc., ("NADR") and files this Application for Preliminary Injunction and shows as follows:

1.   This is an action for false designations of origin and false or misleading representations of fact under the Lanham Act, 15 U.S.C. § 1051, et seq. (as amended); willful violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; misappropriation of trade secrets; disclosure of confidential information; unfair competition; common law unjust enrichment; and trade secret misappropriation in violation of the Oklahoma Uniform Trade Secrets Act, 78 Okl.St.Ann. § 85, *et seq*. Plaintiff's First Amended Original Complaint and Request for Preliminary and Permanent Injunction ("Amended Complaint") [DKT. 14] are incorporated by reference.

2.   This lawsuit is brought in part to stop Defendant DNAS from disclosing, using or threatening to use or disclose confidential information and/or misrepresenting the origin and ownership of such confidential information. Such information consists, in part, of genetic information and genetic analysis derived from it, which belongs to NADR. Further, and

1

irrespective of the issue of ownership of such information, DNAS has an obligation to keep such information confidential and not use it for any purpose except for the benefit of NADR as set forth in an agreement between the parties. NADR owns a membership list that is confidential, but which DNAS has begun to use so it can contact NADR's members in competition with NADR through the actual and promised (threatened) misuse and disclosure of the confidential information. NADR's genetic and membership information is unique and proprietary, and was created over years and at significant investment. NADR's deer genetics registry is a leader in its field and has enjoyed widespread acceptance among deer breeders. DNAS performed certain services for NADR, which included hosting its information on a computer system using DNAS software and performing genetic testing of deer tissue samples pursuant to agreements that terminated on December 31, 2016. DNAS was required to return the Registry to NADR and not use it for any purpose outside the agreements except as authorized by NADR. However, immediately upon termination of the agreement, DNAS began contacting NADR's members and asking them to use its DNA testing services and offering access to what NADR believes to be the Registry that was supposed to have been returned to NADR, which contacts would necessitate use of NADR's membership list and confidential information. Further, DNAS has circulated an advertisement that represented "Our database of over 230,000 deer genetic profiles provides comparisons and lineages for white-tailed deer and mule deer across North America." The database, which upon information and belief is the Registry, consists of confidential information of NADR. The misrepresentation of the database as belonging to DNAS and the appropriation of NADR trade secret information contained therein irreparably harm NADR as well as its members and any other users who may be confused and deceived by DNAS' statements. NADR seeks the equitable and injunctive powers of this Court to stop DNAS from completing its

scheme of false and misleading statements regarding NADR information in its possession and the misappropriation and destruction of its trade secrets. See Exhibit 1, the Burdette Declaration filed with the Amended Complaint and incorporated herein by reference.

3. This Court has subject matter jurisdiction as set forth in the Amended Complaint.

4. This Court has personal jurisdiction over DNAS because DNAS is committing tortious acts within the state of Texas by, among other things, using the confidential trade secret membership list of NADR to advertise deer genetic identification and matching services in Texas. DNAS misrepresented in its advertisements and marketing materials that the information that it will use for genetic matching services belonged to DNAS, however, such is in whole or part the trade secret of NADR, all of which DNAS agreed to keep confidential and only use for the benefit of NADR. Through such acts, DNAS misrepresents the origin and ownership of information that belongs to NADR. DNAS has begun to use and offer (threaten) to use such information commercially in the Eastern District of Texas. These acts have caused injury and will continue to cause injury to NADR within the state of Texas. Such creates confusion as to the source of goods and services in Texas as they relate to the genetic services offered by NADR and DNAS.

5. NADR was formed in Texas in 2007, and has been in operation approximately ten years. In 2007, NADR engaged DNAS to process deer genetic identification, perform matching services and to host a database of NADR's information that was accessible online. The genetic information was submitted to DNAS to process at its address in Oklahoma, which was provided to NADR members to use for such submission purposes.

6. NADR began as a cooperative effort between the North American Deer Farmers Association (NADeFA), the Texas Deer Association (TDA), and Venados De Mexico (VDM).

Voting members of NADeFA, TDA, and VDM are allowed use of the NADR which offers sire and dam confirmation, parentage certificate for each registered deer, and access to the online inventory that includes pedigree and offspring information.

7. Since 2007, NADR has expended substantial time, money, skill, and labor in developing its membership list and genetic information. NADR has taken care to protect its trade secrets.

8. NADR has hundreds of members and the deer genetic information represents over 200,000 deer. NADR has significant and valuable goodwill associated with such information.

9. As a result of the long, extensive, widespread, and substantial use by deer breeders of NADR's information, NADR has become a well-respected source of such information and deer breeders depend upon NADR to have the files with complete pedigree information so they can identify their deer and their deer's genetic pedigree. NADR enjoys an extremely favorable reputation among deer breeders. Deer breeders associate the accumulated genetic information and related services with NADR.

10. NADR has expended substantial time, money, skill, and labor in developing and maintaining trade secrets and other confidential information related to the deer genetic information and membership list at issue in this case. NADR's accumulated deer genetic information is a unique asset based on data collected over ten years. NADR has taken reasonable steps to protect these trade secrets from disclosure or misuse. One such step was to enter into an agreement with DNAS to preserve the confidentiality of the information, compel the return of such information to NADR upon the termination of DNAS' services and prohibit any use of Registry related information except as allowed by the agreement or otherwise approved by NADR.

11. After the initial 2007 contract with DNAS, in 2013 the parties entered into a revised

agreement, the Contract for Services, pursuant to which DNAS would maintain a Registry of information for NADR. Pursuant to the latter agreement, which was ratified and amended in 2014, DNAS agreed to provide certain services to NADR in the conduct of NADR's deer registration business. Relevant provisions of the Contract for Services included:

(a) DNAS would provide an online inventory of registered animals with registration number, registration date, recorded owner, sex, year born, sire and dam of record, and status (living or deceased).

(b) NADR had the non-exclusive right to use DNAS' code to run the Registry during the term of the agreement.

(c) DNAS agreed that it would not use the NADR Registry, the Biological Materials, the Genetic Information, the Genotype Analysis Data or the Registration Data for any purpose other than for the creation and maintenance of the Registry, the NAWR Registry and the NADeFA Registry, and the creation of reports to be furnished to NADR and/or the members of TDA, NADeFA or NADR, as provided in this agreement, unless it was otherwise mutually agreed to in writing by NADR and DNAS.

(d) The Biological Materials, Genetic Information, Genotype Analysis Data, Membership Directory and any other information provided by NADR or its members to DNAS was and would remain the joint property of the member providing the same and/or NADR, and it was the confidential, proprietary information of member and NADR (collectively, the "NADR Information"). The Registry, which contained and consisted of the NADR Information in an appropriate format, was and would remain the confidential, proprietary information and property of NADR.

(e) Any information developed by DNAS (the "DNAS Data") incidentally through the

performance of its services that analyzed or organized the collective database (as distinct from the original NADR Information) shall not be considered member or NADR Information and such information shall be solely the property of DNAS.

(f) NADR had the right to all NADR Information in electronic format (other than Biological Materials which would remain in their original state) upon request and NADR was not prohibited from loading it into a third party database, or into its own proprietary database.

(g) Upon any termination of the agreement between NADR and DNAS, DNAS was to deliver to NADR all NADR and NADR member Information, Biological Materials, Genetic Information and Genotype Analysis Data, along with the Registry in the form of a report in the manner in which it is available in the current software.

(h) DNAS was prohibited from disclosing to any other entity or individual any of the content of the Registry or any other information it gained from NADR and/or NADR members in the performance of the agreement or that it gained in its prior dealings with NADR (the "Confidential Information"), unless approved in writing by the NADR Executive Committee. Confidential Information was defined to exclude any part of such Confidential Information to the extent that such Confidential Information: "(i) is or becomes public other than as a result of acts by DNAS, or its affiliates, or their respective agents, representatives or employees; (ii) can be shown was already known to DNAS at the time of its disclosure by NADR to DNAS; (iii) is independently obtained by DNAS from a third party having no duty of confidentiality to NADR; (iv) is independently developed by DNAS without use of any Confidential Information supplied hereunder; or (v) is obligated to be disclosed pursuant to applicable law, regulation, or legal process; *provided, however,* that prior to disclosure, DNAS will promptly notify NADR and shall cooperate with NADR in securing a protective order or any similar action taken to maintain the

confidentiality of the information." DNAS acknowledged that it would be very difficult, if not impossible to accurately quantify the damages that NADR would suffer in the event DNAS disclosed any of NADR's confidential, proprietary information to a third party, and acknowledged that injunctive relief would be proper in the event DNAS were actually disclosing such information or threatening to disclose the same in violation of the agreement.

12. As of January 1, 2017, NADR ceased using DNAS to host its Registry and perform the deer genetic identification and matching services. Then, DNAS began to do precisely what it promised not to do and which it agreed would merit the imposition of injunctive relief against it. DNAS began offering the same services it had been offering through the agreement with NADR, which necessarily requires the use of NADR trade secrets and confidential information including but not limited to the Registry that was apparently retained despite DNAS having represented that it was returned to NADR.

13. After almost a decade of working with NADR's trade secrets subject to a duty of confidentiality and trust, upon termination DNAS immediately began to contact NADR affiliated users to market its services and to tout the size of the database of deer genetic profiles that it would use, which included animals whose genetic material was provided under the NADR agreement. As an example, portions of an email DNAS directed into the Eastern District of Texas are reproduced below:

> Subject: DNA Solutions News: Send your deer samples to DNA Solutions and access our online deer database
>
> DNA Solutions proudly announces it will continue providing DNA testing and comparisons to the white-tailed and mule deer breeders. We value our relationship with the deer breeding industry. Therefore, beginning January 3, 2017, DNA Solutions will provide DNA testing and comparisons directly to the deer breeding industry. DNA Solutions' online deer database is available to all deer breeders that have had DNA testing performed by DNA Solutions or who sends samples to DNA Solutions to be processed. We understand that Top 30,

7

> Texas Top 30, and Midwest Select are coming up in the next couple months, and we want to make sure you have uninterrupted service for your DNA testing.
>
> DNA Solutions is a leader in the animal genetics industry and our partnership with deer breeders during the past 16 years has yielded great advancement in deer breeding efforts. Our laboratory continues to provide animal genetic testing including: deer parentage verification, animal forensic analysis, semen sample confirmation, Prion Gene testing for reliability of the live CWD test, and prosecutions and defense of wildlife enforcement actions.
>
> DNA Solutions pricing for deer genetic testing:
>
> * Parentage - $62 for manual and electronic submissions
> * Work Orders - $20
> * Prion Gene Test - $20 if requested at time sample is submitted
> * Prion Gene Test - $35 if sample has been previously tested by DNA Solutions
>
> We have provided links to the forms for submitting samples to DNA Solutions for genetic testing.
>
> Send your samples to our laboratory at DNA Solutions, Inc., 840 Research Parkway, Ste. 551, Oklahoma City, OK 73104.
>
> If you have questions regarding your animal's genetics, online access, or how to submit samples, contact our office at 866-362-9778. We look forward to partnering with you in 2017 providing uninterrupted access to your deer genetic information and furthering your efforts to continue excellence in the deer breeding industry.
>
> Happy New Year!
> DNA Solutions, Inc.

See Exhibit 1, the Burdette Declaration.

14. When DNAS said that "DNA Solutions' online deer database is available to all deer breeders that have had DNA testing performed by DNA Solutions or who sends samples to DNA Solutions to be processed," that was a reference to using the trade secret information of NADR for the commercial purposes of DNAS in violation of the duty to keep such material confidential and only use it for the benefit of NADR. Also, the email was sent to NADR affiliated users, thus evidencing use of the confidential NADR membership roster and/or other confidential

information provided to DNAS under the agreement. DNAS' statement, "We understand that Top 30, Texas Top 30, and Midwest Select are coming up in the next couple months, and we want to make sure you have uninterrupted service for your DNA testing" is a reference to significant industry events at which the continuation of DNAS's misrepresentations would further expose NADR's trade secrets and erode its goodwill. The reference to "uninterrupted service" suggests that DNAS is continuing to use the NADR registry and related genetic and biological information as its own. Moreover, it is an implied admission that it did not return the NADR registry and related information to NADR as required by the agreement.

15. DNAS disseminated into Texas an advertisement of its planned exhibit at the Top 30 Whitetail Extravaganza event that was held on January 27 and 28, 2017, in Austin, Texas. Relevant portions are reproduced below:

> DNA Solutions is exhibiting at the Texas Top 30 in Austin, Texas, January 27-28, 2017. Stop by our booth and visit Dr. Brandt Cassidy, Director of Operations and Laboratory Director, and Debra Lyon, Director of Client Services and Business Development, to learn more about our parentage verification services and SNP based Prion Gene Test that determines the reliability of live CWD tests.
>
> DNA Solutions is a trusted partner to breeders for over 16 years providing superior genetic testing services for white-tailed deer, mule deer, cattle, and dog.
>
> Our services include:
>
> - Parentage Verification
> - SNP based Prion Gene Test (determines the reliability of live CWD test)
> - Herd Management
> - Semen Sample Confirmation
> - Animal Forensic Analysis
> - Registry Development
> - Support for Prosecution and Defense of Wildlife Enforcement Actions
>   Our database of over 230,000 deer genetic profiles provides comparisons and lineages for white-tailed deer and mule deer across North America.
>
> We look forward to seeing you at Texas Top 30!

A copy of this announcement is included as Exhibit 2 to the Burdette Declaration, and fully

9

incorporated herein. DNAS has represented to deer breeders that it is the owner of the database of over 230,000 deer genetic profiles, which it will use to provide comparisons and lineages for deer. The information used by DNAS belongs to NADR and it is confidential and proprietary. The database which is the NADR Registry was required to be returned to NADR at the termination of the contract. Pursuant to the contract, DNAS is prohibited from using and/or disclosing to any other entity or individual any of the content of the Registry or any other information it gained from NADR and/or NADR members in the performance of the agreement or that it gained in its prior dealings with NADR.

16. Ray Burdette, as the President of NADR, and other members of the governing body of NADR have received communications from members who have seen the DNAS communications and who have become concerned and confused as to the ownership of the registry, the continuity of the information so that matches can continue without omission if certain deer are left out of the parentage of an offspring, confidentiality of information and other concerns. Misrepresentations by DNAS are causing confusion among members and damaging the goodwill and business relationships of NADR. The DNAS announcements show that it is offering to use and disclose confidential NADR information for its own profit and to the exclusion and detriment of NADR and its members. Given that disclosure destroys trade secrets, such public use and/or disclosure of NADR trade secrets constitutes irreparable harm to NADR.

17. DNAS is trading off of NADR's product, which is the registry and related genetic information. DNAS is misrepresenting that it belongs to DNAS and making such statements, at least in part, to NADR's own members. DNAS is breeching its duty of confidentiality.

18. Neither the NADR Board of Directors, nor anyone acting on its behalf, has given DNAS permission to use or disclose NADR's confidential information. DNAS' unauthorized use of

NADR's registry, its member list and other confidential information along with its unauthorized representation that it owns the genetic information and has the right to disclose it is likely to cause confusion, to cause mistake, or to deceive consumers and potential customers of the parties, at least as to the affiliation, connection, or association of DNAS with NADR or NADR's confidential property, or the origin, sponsorship, or approval of DNAS' activities by NADR.

19. DNAS' unauthorized use of NADR's property and misrepresentations of ownership indicate to the deer breeders and public that DNAS, its business, and/or its services are sponsored, endorsed, or approved by NADR as a continuation of the former, but dissolved, relationship, when there is no longer any such connection.

20. DNAS falsely designates the origin of its services and the information it accesses to perform them, and falsely and misleadingly describes and represents facts with respect to DNAS and its products.

21. DNAS' unauthorized use of NADR's member list and other confidential information enables it to trade on and receive the benefit of the goodwill built up at the labor and expense of NADR, and to gain acceptance for services based on the reputation and goodwill of NADR.

**LANHAM ACT VIOLATION AND UNFAIR COMPETITION**

22. NADR incorporates by reference the foregoing allegations fully herein.

23. The acts of DNAS complained of in NADR's Amended Complaint constitute unfair competition in violation of 15 U.S.C. § 1125(a). DNAS has used in commerce words, false designations of origin, or false or misleading representations of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such entity with NADR, or as to the origin, sponsorship, or approval of its services.

24. DNAS' conduct has caused and is causing irreparable injury to NADR and, unless

enjoined by this Court, will continue both to damage NADR and to deceive the public. NADR has no adequate remedy at law.

## MISAPPROPRIATION OF TRADE SECRETS

25. NADR incorporates by reference the foregoing allegations fully herein.

26. NADR has a product or service used in interstate commerce, and trade secrets that have been misappropriated and threatened to be misappropriated by DNAS in violation of 18 U.S.C. § 1836(b)(3). NADR seeks injunction, damages, multiples of damages and attorneys' fees.

27. NADR further alleges that the acts complained of herein constitute misappropriation of trade secrets by DNAS under common and statutory law. The Oklahoma Uniform Trade Secrets Act, 78 Okl.St.Ann. § 85, et seq. authorizes injunctive relief as protection from misappropriation and threatened misappropriation. Disclosure itself is a form of misappropriation.

28. DNAS' conduct has caused and is causing irreparable injury to NADR and, unless enjoined by this Court, will continue to damage NADR. NADR has no adequate remedy at law.

## CONSTRUCTIVE TRUST

29. NADR incorporates by reference the following allegations fully herein.

30. Because of its unlawful conduct, as set forth above, DNAS and its employees, affiliates, agents, subsidiaries, and related companies hold in constructive trust for NADR all trade secrets, and other assignable intellectual property that was derived, in whole or in part, from NADR's confidential information, DNA samples, trade secrets, or any other proprietary information.

31. This Court should order DNAS and its employees, affiliates, agents, subsidiaries, and related companies, through affirmative injunction, to assign to NADR all trade secrets and any other assignable intellectual property derived, in whole or in part, from any NADR trade secret, or other proprietary information, which was derived for DNAS' benefit rather than NADR's

benefit, and to segregate and preserve any proceeds received from use of NADR's confidential information including NADR's member list and contact information.

## REQUEST FOR PRELIMINARY INJUNCTION

32.     A preliminary injunction against DNAS' using, threatening to use, offering to use and/or otherwise disclosing the above described confidential information is necessary and authorized by law because:  (1) there is a substantial likelihood of success on the merits of NADR's above described Lanham Act claims and misappropriation of trade secret and confidential information claims; (2) NADR would suffer irreparably injury absent preliminary relief; (3) the balance of equities favors such relief; and (4) the public interest would not by disserved by such relief.  *See Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d 477, 488 (5th Cir. 2016); *Hart v. Wells Fargo Bank, N.A.*, *1 (N.D. Tex. Mar. 31, 2014) (standard for temporary restraining order and preliminary injunction are the same).

33.     NADR asks the Court to enter a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure to prevent further irreparable injury to NADR pending final resolution of this lawsuit, at which time a permanent injunction will be warranted by the facts stated above. NADR asks the Court to enjoin DNAS, its officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B) from the following acts:

    (a)     DNAS will not use, offer to use, alter, delete, modify, disclose or permit access to the Registry, the Biological Materials, the Genetic Information, the Genotype Analysis Data, the Registration Data, Membership Directory or any other information provided by NADR or its members to DNAS or any copy of same (electronic, paper or otherwise) or information derived from such information for any purpose until further order of the Court.

(b) DNAS shall not use, offer to use or disclose to any other entity or individual any of the content of the Registry or any other information it gained from NADR and/or NADR members in the performance of any of its prior dealings with NADR ("Confidential Information"), until further order of the Court. Such shall include but not be limited to the identity and contact information of persons and organizations who previously did business with DNAS under agreements with NADR.

(c) DNAS will not represent in commerce that it owns or has the right to disclose or access or offer access for commercial purposes a database containing deer genetic profiles if any of such deer genetic profiles contained therein was provided by NADR, or a member of NADR, or was derived from such information.

(d) DNAS will not use the information maintained in the Registry, the Biological Materials, the Genetic Information, the Genotype Analysis Data, the Registration Data, Membership Directory or any other information provided by NADR or its members to DNAS to build or operate a registry without further order of the Court.

34. NADR has alleged causes of action pursuant to the Lanham Act and misappropriation of trade secrets against DNAS, and as indicated in the Amended Complaint, NADR has a probable right of recovery and likelihood of succeeding on the merits. NADR will suffer irreparable harm without Court intervention and for which there is no adequate remedy at law.

35. As a direct and proximate result of DNAS' wrongful actions, as set forth in the Amended Complaint, NADR will suffer injury that will be irreparable and for which no adequate remedy at law exists without the protections of injunctive relief. NADR is willing to post a necessary reasonable bond to facilitate the injunctive relief requested.

36. Wrongful, damaging conduct has occurred and will continue to occur if not enjoined.

DNAS is intent on exploiting NADR's trade secrets, registry of deer genetic information and membership directory in violation of governing law and must be restrained from doing so.

37. The public interest is served by an injunction as it protects against the confusion and deception of deer breeders and the public, as described above, advances the public interest in trade secret protection and preservation of intellectual property and it protects the substantial investment made by NADR in creating and preserving its registry of deer genetic information and membership list.

38. DNAS has recognized in its agreements with NADR that injunctive relief is appropriate to protect the subject confidential information of NADR.

39. At the time NADR filed the instant suit it sought expedited discovery from DNAS to further flesh out the facts supporting its request for injunctive relief. This request was granted by the Court. However, DNAS has refused to provide such discovery. These matters are the subject of the currently pending Motion to Quash and for Protective Order. NADR respectfully requests and reserves the opportunity to supplement this Application for Preliminary Injunction at a reasonable time following the receipt of expedited discovery ordered by the Court.

## **PRAYER**

For the foregoing reasons, NADR respectfully prays that it be granted a Preliminary Injunction against DNAS as described herein. NADR prays for any other, further or additional orders required to enforce the terms of the injunctive relief requested herein and/or shown to be necessary or convenient to protect NADR from irreparable harm arising from the wrongful acts or omissions of DNAS.

Respectfully submitted,

SIEBMAN, BURG, PHILLIPS & SMITH, LLP

By: /s/ Clyde Siebman
Clyde M. Siebman
Texas Bar No. 18341600
SIEBMAN, BURG, PHILLIPS & SMITH LLP
300 North Travis
Sherman, Texas 75090
(903) 870-0070 – Telephone
(903) 870-0066 – Fax
clydesiebman@siebman.com

Bryan H. Burg
Texas Bar No. 03374500
SIEBMAN, BURG, PHILLIPS & SMITH LLP
4949 Hedgcoxe Road, Suite 230
Plano, Texas 75024
(214) 387-9100 – Telephone
(214) 387-9125 – Fax
bryanburg@siebman.com

Elizabeth S. Forrest
Texas Bar No.  24086207
SIEBMAN, BURG, PHILLIPS & SMITH LLP
4949 Hedgcoxe Road, Suite 230
Plano, Texas 75024
(214) 387-9100 – Telephone
(214) 387-9125 – Fax
elizabethforrest@siebman.com

**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on this 27th day of February, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by facsimile transmission and/or first class mail.

            /s/ *Clyde M. Siebman*
            Clyde M. Siebman

**CERTIFICATE OF CONFERENCE**

  On February 27, 2017, Clyde Siebman and Bryan Burg, counsel for NADR, conferred with Andrew Chilson and Kristan Bolding, counsel for DNAS. Counsel have complied with the meet and confer requirement in Local Rule cv-7(h). The motion is opposed. The personal conference required by Rule cv-7(h) has been conducted. No agreement could be reached because DNAS opposes injunctive relief in this case. The discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

            /s/ *Clyde M. Siebman*
            Clyde M. Siebman