UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NORTH AMERICAN DEER REGISTRY, INC., a Texas Non-Profit Corporation, | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | Case No. 4:17-cv-00062-ALM Jury Demanded |
| DNA SOLUTIONS, INC., an Oklahoma Corporation, | § § § § | |
| Defendant. | § | |

**ORDER GRANTING PLAINTIFF NORTH AMERICAN DEER REGISTRY, INC.'S APPLICATION FOR PRELIMINARY INJUNCTION**

This cause was heard on the motion of Plaintiff North American Deer Registry, Inc. ("NADR") for a preliminary injunction, and due notice was given to Defendant DNA Solutions, Inc. ("DNAS").

THE COURT FINDS, after having considered the evidence and the arguments of counsel, that:

NADR offers services including whitetail and mule deer sire and dam confirmation, a parentage certificate for each registered deer, and access to an online inventory that includes pedigree and offspring information.

In 2007, NADR engaged DNAS to process deer genetic identification, perform matching services and to host a database of NADR's information that was accessible online.

NADR discontinued using the services of DNAS as of January 1, 2017.

Since 2007, NADR has expended substantial time, money, skill, and labor in developing its membership list and genetic information. NADR has taken care to protect such information

1

as its trade secrets.

NADR has hundreds of members and the deer genetic information represents over 200,000 deer. NADR has significant and valuable goodwill associated with such information.

NADR has become a well-respected source of such information and deer breeders depend upon NADR to have the files with complete pedigree information so they can identify their deer and their deer's genetic pedigree. NADR enjoys an extremely favorable reputation among deer breeders. Deer breeders associate the accumulated genetic information and related services with NADR.

NADR has expended substantial time, money, skill, and labor in developing and maintaining trade secrets and other confidential information related to the deer genetic information and membership list at issue in this case. NADR's accumulated deer genetic information is a unique asset based on data collected over ten years. NADR has taken reasonable steps to protect these trade secrets from disclosure or misuse. One such step was to enter into an agreement with DNAS to preserve the confidentiality of the information, compel the return of such information to NADR upon the termination of DNAS' services and prohibit any use of Registry related information except as allowed by the agreement or otherwise approved by NADR.

After the initial 2007 contract with DNAS, in 2013 the parties entered into a revised agreement, the Contract for Services, pursuant to which DNAS would maintain a Registry of information for NADR. Pursuant to the latter agreement, which was ratified and amended in 2014, DNAS agreed to provide certain services to NADR in the conduct of NADR's deer registration business. Relevant provisions of the Contract for Services included:

> DNAS would provide an online inventory of registered animals with registration number, registration date, recorded owner, sex, year born, sire and

dam of record, and status (living or deceased).

DNAS agreed that it would not use the NADR Registry, the Biological Materials, the Genetic Information, the Genotype Analysis Data or the Registration Data for any purpose other than for the creation and maintenance of the Registry, the NAWR Registry and the NADeFA Registry, and the creation of reports to be furnished to NADR and/or the members of TDA, NADeFA or NADR, as provided in this agreement, unless it was otherwise mutually agreed to in writing by NADR and DNAS.

The Biological Materials, Genetic Information, Genotype Analysis Data, Membership Directory and any other information provided by NADR or its members to DNAS was and would remain the joint property of the member providing the same and/or NADR, and it was the confidential, proprietary information of member and NADR (collectively, the "NADR Information"). The Registry, which contained and consisted of the NADR Information in an appropriate format, was and would remain the confidential, proprietary information and property of NADR.

NADR had the right to all NADR Information in electronic format (other than Biological Materials which would remain in their original state) upon request and NADR was not prohibited from loading it into a third party database, or into its own proprietary database.

Upon any termination of the agreement between NADR and DNAS, DNAS was to deliver to NADR all NADR and NADR member Information, Biological Materials, Genetic Information and Genotype Analysis Data, along with the Registry in the form of a report in the manner in which it is available in the current software.

DNAS was prohibited from disclosing to any other entity or individual any of the content of the Registry or any other information it gained from NADR and/or NADR members in the performance of the agreement or that it gained in its prior dealings with NADR (the "Confidential Information"), unless approved in writing by the NADR Executive Committee. Confidential Information was defined to exclude any part of such Confidential Information to the extent that such Confidential Information: "(i) is or becomes public other than as a result of acts by DNAS, or its affiliates, or their respective agents, representatives or employees; (ii) can be shown was already known to DNAS at the time of its disclosure by NADR to DNAS; (iii) is independently obtained by DNAS from a third party having no duty of confidentiality to NADR; (iv) is independently developed by DNAS without use of any Confidential Information supplied hereunder; or (v) is obligated to be disclosed pursuant to applicable law, regulation, or legal process; *provided, however,* that prior to disclosure, DNAS will promptly notify NADR and shall cooperate with NADR in securing a protective order or any similar action taken to maintain the confidentiality of the

information."

DNAS acknowledged that it would be very difficult, if not impossible to accurately quantify the damages that NADR would suffer in the event DNAS disclosed any of NADR's confidential, proprietary information to a third party, and acknowledged that injunctive relief would be proper in the event DNAS were actually disclosing such information or threatening to disclose the same in violation of the agreement.

After January 1, 2017, when NADR ceased using DNAS to host its Registry and perform the deer genetic identification and matching services, DNAS began offering the same or similar services it had been offering through the agreement with NADR, which requires the use of NADR trade secrets and confidential information including but not limited to the Registry and NADR's membership list. DNAS has circulated an advertisement that represented "Our database of over 230,000 deer genetic profiles provides comparisons and lineages for white-tailed deer and mule deer across North America." The database is the Registry and consists of confidential information of NADR. The misrepresentation of the database as belonging to DNAS and the appropriation of NADR trade secret information contained therein irreparably harm NADR as well as its members and any other users who may be confused and deceived by DNAS' statements.

NADR sued DNAS alleging causes of action including false designations of origin and false or misleading representations of fact under the Lanham Act, 15 U.S.C. § 1051, et seq. (as amended); willful violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; misappropriation of trade secrets; disclosure of confidential information; unfair competition; common law unjust enrichment; and trade secret misappropriation in violation of the Oklahoma Uniform Trade Secrets Act, 78 Okl.St.Ann. § 85, *et seq*.

A preliminary injunction against DNAS' using, threatening to use, offering to use and/or otherwise disclosing the above described confidential information is necessary and authorized by

law because: (1) there is a substantial likelihood of success on the merits of NADR's above described Lanham Act claims and misappropriation of trade secret and confidential information claims; (2) NADR would suffer irreparably injury absent preliminary relief; (3) the balance of equities favors such relief; and (4) the public interest would not by disserved by such relief. *See Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d 477, 488 (5th Cir. 2016); *Hart v. Wells Fargo Bank, N.A.*, *1 (N.D. Tex. Mar. 31, 2014) (standard for temporary restraining order and preliminary injunction are the same).

As a direct and proximate result of DNAS' wrongful actions, as set forth in the Amended Complaint, NADR will suffer injury that will be irreparable and for which no adequate remedy at law exists without the protections of injunctive relief.

NADR is willing to post a necessary reasonable bond to facilitate injunctive relief.

Wrongful, damaging conduct has occurred and will continue to occur if not enjoined, including using and disclosing NADR's trade secrets, registry of deer genetic information and membership directory.

The public interest is served by a preliminary injunction as it protects against the confusion and deception of deer breeders and the public, advances the public interest in trade secret protection and preservation of intellectual property and it protects the substantial investment made by NADR in creating and preserving its registry of deer genetic information and membership list.

DNAS has agreed with NADR that injunctive relief is appropriate to protect the confidential information of NADR.

IT IS ORDERED, ADJUDGED AND DECREED that, pending further order of this Court, Defendant DNAS, its officers, agents, representatives, employees and successors, and all

other persons in active concert and participation with it, are hereby restrained and enjoined from committing the following acts:

(a) DNAS will not use, offer to use, alter, delete, modify, disclose or permit access to the Registry, the Biological Materials, the Genetic Information, the Genotype Analysis Data, the Registration Data, Membership Directory or any other information provided by NADR or its members to DNAS or any copy of same (electronic, paper or otherwise) or information derived from such information for any purpose until further order of the Court.

(b) DNAS shall not use, offer to use or disclose to any other entity or individual any of the content of the Registry or any other information it gained from NADR and/or NADR members in the performance of any of its prior dealings with NADR ("Confidential Information"), until further order of the Court. Such shall include but not be limited to the identity and contact information of persons and organizations who previously did business with DNAS under agreements with NADR.

(c) DNAS will not represent in commerce that it owns or has the right to disclose or access or offer access for commercial purposes a database containing deer genetic profiles if any of such deer genetic profiles contained therein was provided by NADR, or a member of NADR, or was derived from such information.

(d) DNAS will not use the information maintained in the Registry, the Biological Materials, the Genetic Information, the Genotype Analysis Data, the Registration Data, Membership Directory or any other information provided by NADR or its members to DNAS to build or operate a registry without further order of the Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Order shall be effective from and after _____[time], _____[date].

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs file their bond, which may be with a corporate surety to be approved by the Court, in the sum of $\_\_\_\_\_$, conditioned for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.