# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| NORTH AMERICAN DEER REGISTRY, INC. § § § v. § § DNA SOLUTIONS, INC. § § | Civil Action No. 4:17-CV-00062 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant DNA Solutions, Inc.'s Motion to Dismiss Amended Complaint and Compel Arbitration, or in the Alternative, to Transfer Venue to the Western District of Oklahoma (Dkt. #19) and Motion to Stay (Dkt. #31). After reviewing the relevant pleadings, motion, and arguments of counsel, the Court finds the motions should be denied.

### BACKGROUND

In 2007, North American Deer Registry, Inc. ("Deer Registry") engaged DNA Solutions, Inc. ("DNAS") to process deer genetic information, perform matching services, and host a database for Deer Registry's information, which would be accessible online. As part of the agreement, DNAS agreed to preserve the confidentiality of Deer Registry's information and to return such information upon termination of DNAS's services.

In 2013, the parties entered into a revised agreement for DNAS to maintain a registry of information for Deer Registry. The parties entered into a similar agreement in 2014 (the "Contract"). Deer Registry terminated the Contract effective January 1, 2017.

Under the Contract, Deer Registry retained ownership of all biological materials, genetic information, genotype analysis data, membership directory, and any other information provided

by Deer Registry. DNAS, on the other hand, retained ownership of any code that it created as a result of running the registry. DNAS agreed to keep confidential the content of the registry or any other information it received from Deer Registry in the performance of the Contract or in its prior dealings with Deer Registry. DNAS further agreed that, upon termination of the Contract, it would return all information provided by Deer Registry.

On January 27, 2017, Deer Registry filed a complaint, alleging unfair competition under the Lanham Act, misappropriation of trade secrets, constructive trust, unjust enrichment, and requesting injunctive relief (Dkt. #1). The same day, Deer Registry made a demand for arbitration seeking relief for breach of contract, temporary and permanent injunctions, declaratory judgment, and attorneys' fees (Dkt. #19, Exhibit 2). On February 22, 2017, Deer Registry filed an amended complaint (Dkt. #14). On March 8, 2017, DNAS filed this motion to dismiss (Dkt. #19). On March 22, 2017, Deer Registry filed a response (Dkt. #25). On March 29, 2017, DNAS filed a reply (Dkt. #29). On March 31, 2017, while the motion to dismiss was still pending, DNAS filed a motion to stay pending arbitration (Dkt. #31). On April 5, 2017, Deer Registry filed a sur-reply to the motion to dismiss (Dkt. #33). On April 14, 2017, Deer Registry filed a response to the motion to stay (Dkt. #34).

On April 27, 2017, the Court held a hearing on the parties' arguments regarding the arbitration provision (Dkt. #37). At the hearing, the Court ordered the parties to submit supplemental briefing regarding each cause of action, in the event that the Court finds the arbitration provision is narrow (Dkt. #37). On May 1, 2017, both parties submitted supplemental briefs (Dkt. #39; Dkt. #41).

## LEGAL STANDARD

"The Federal Arbitration Act ("FAA") expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). The FAA, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

When considering a motion to compel arbitration, the Court must address two questions. *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009) (citing *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). "First, whether there is a valid agreement to arbitrate, and second, whether the dispute in question falls within the scope of the arbitration agreement." *Id*. Concerning the first question of contract validity, the Court should apply "ordinary state-law principles that govern the formation of contracts." *Id.* at 222 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The second question of scope is answered "by applying the 'federal substantive law of arbitrability.'" *Id*. (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Courts construe any ambiguities as to the scope of an arbitration clause in favor of arbitration. *See Fleetwood Enters.*, 280 F.3d at 1073. "[A]rbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (quoting *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 338 (5th Cir. 1984)).

**ANALYSIS**

The parties do not dispute that there is a valid arbitration agreement that covers disputes concerning interpretation of the Contract. The only dispute is whether Deer Registry's claims in this Court come within the scope of the arbitration agreement.

As an initial matter, DNAS makes a passing reference to the choice of law provision of the Contract to state that Oklahoma law and the Oklahoma Uniform Arbitration Act should apply to this case. However, DNAS then admits that there is no conflict between Oklahoma law and the FAA. Therefore, the Court will apply federal arbitration law to determine the scope of the arbitration clause, in accordance with the FAA.[1] *Graves*, 568 F.3d at 223.

The arbitration provision states:

> 20. <u>Dispute Resolution</u>. In the event a dispute arises concerning the interpretation of the terms of this Agreement, the parties agree that such dispute shall be submitted to binding arbitration pursuant to the Commercial Rules of the American Arbitration Association. In the event of such arbitration, the prevailing party shall be entitled to recover all reasonable and necessary attorneys' fees, arbitration fees, and all other expenses related to the arbitration action. The arbitration shall be held in Oklahoma City, Oklahoma County, State of Oklahoma.

(Dkt. #19, Exhibit 2 at p. 23). DNAS argues the Court should dismiss the case in favor of arbitration because all of Deer Registry's claims involve interpretation of the Contract and thus fall within the scope of the arbitration provision. Deer Registry responds that it complied with the arbitration clause by demanding arbitration for breach of contract and declaratory judgment claims and by filing the rest of its claims in the district court.

---

[1] To the extent that DNAS does argue Oklahoma law should govern, its argument fails. The Fifth Circuit has explained, "FAA rules apply absent clear and unambiguous contractual language to the contrary." *BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 790 (5th Cir. 2015) (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 341 (5th Cir. 2004)). "[T]his Court permits arbitration under non-FAA rules if a contract *expressly references* state arbitration law . . . ." *Id.* (citation omitted). "[A] choice-of-law provision is insufficient, by itself, to demonstrate the parties' clear intent to depart from the FAA's default rules." *Action Indus.*, 358 F.3d at 342. Here, the Contract does not expressly reference Oklahoma Arbitration law. Therefore, there is insufficient evidence of intent to apply Oklahoma law. *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016).

Deer Registry made a demand for arbitration on claims for breach of contract, declaratory judgment, and injunctive relief. Specifically, Deer Registry seeks declaratory judgment for:

> a. [O]wnership of specific rights to data
>
> b. [C]ompliance with confidentiality provisions.
>
> c. What is described by the phrase, "Any information developed by DNAS (the "DNAS Data") incidentally through the performance of its services hereunder that analyze or organize the collective database (as distinct from the original NADR Information) shall not be considered member or NADR Information and such information shall be solely the property of DNAS."
>
> d. The extent, if any, of "DNAS's exclusive continued ownership of the rights to the Data (as defined in the Agreement) obtained and the Database (as defined in the Agreement) created during the term of the Agreement."
>
> e. [C]ompliance with prohibitions on using NADR information for any purpose of than those authorized in the Agreement.

(Dkt. #19, Exhibit 2). Simultaneously, Deer Registry made claims in this Court for unfair competition under the Lanham Act, misappropriation of trade secrets, constructive trust, and unjust enrichment, and for injunctive relief. Deer Registry argues that its claims in arbitration "concern[] the interpretation" of the Contract but that its claims in this Court do not "concern[] the interpretation" of the Contract.

In its reply, DNAS argued for the first time that the Court does not have the power to determine whether the present dispute is subject to arbitration. DNAS argues that the arbitrator must decide arbitrability because the arbitration provision incorporates the American Arbitration Association ("AAA") Rules. Deer Registry responds by arguing that a passing reference to the AAA Rules is not a clear and unmistakable delegation to the arbitrator.

The Court need not pass on this argument by DNAS because DNAS waived the argument by not asserting it in its motion. A reply brief is limited to "responding to the issues raised in the response." E.D. Tex. Civ. R. CV-7(f). Deer Registry did not make this argument in its response. Deer Registry only mentions the "question of arbitrability" in a block quote addressing whether

5

the arbitration provision was broad or narrow (*See* Dkt. #25 at pp. 7–8). Aside from that, Deer Registry does not make any substantive argument about whether the Court or the arbitrator may determine arbitrability. Therefore, DNAS has waived its argument and the Court will determine arbitrability.[2]

## Motion to Compel Arbitration

The Court must first determine whether the scope of the arbitration agreement is "broad" or "narrow." *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009); *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). Agreements mandating arbitration of disputes that "relate to" or "are connected with" a subject are "broad arbitration clauses capable of expansive reach." *Pennzoil*, 139 F.3d at 1067. On the other hand, agreements mandating arbitration of disputes "arising out of" a subject are narrow. *Id.* For a claim to be arbitrable under a broad clause, it must have "a significant relationship to the contract regardless of the label attached to the dispute." *Jones*, 583 F.3d at 235. If the clause is narrow, the court should not stay or refer the matter to arbitration unless the court determines that the dispute falls within the clause. *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993).

Courts construe any ambiguities as to the scope of an arbitration clause in favor of arbitration. *See Fleetwood Enters.*, 280 F.3d at 1073. "[A]rbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Neal*, 918 F.2d at 37 (quoting *Commerce Park at DFW Freeport*, 729 F.2d at 338). The burden is on the party resisting arbitration to prove that the parties did not intend to arbitrate the claims. *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

---

[2] Even if DNAS did not waive this argument, DNAS fails to show that the parties "clearly and unmistakably" intended to delegate the power to determine arbitrability to the arbitrator. *See Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014).

6

In its motion, DNAS argues that the arbitration clause is broad. Deer Registry argues the arbitration provision is narrow based on its variation from previous agreements and because the tort claims in this Court do not require interpretation of the Contract. During the hearing and in its supplemental brief, DNAS argued that the issue of the arbitration provision's breadth is immaterial because all of Deer Registry's claims involve interpretation of the Contract.

The Court finds the arbitration clause in this case is narrow. Here, the parties only agreed to arbitrate disputes "concerning the interpretation" of the Contract. This is in significant contrast to the standard broad arbitration provision recommended by the AAA, which provides, "Any controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled by arbitration." *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 409–10 (5th Cir. 1990) (quoting Am. Arbitration R. R-3 (1988)).[3] The provision used here is significantly different from a provision that applies to "any dispute" whatsoever between the parties. *See Coffman v. Provost * Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720 (E.D. Tex. 2002), *aff'd* 33 F. App'x 705 (5th Cir. 2002). In *Coffman*, the court distinguished the arbitration clause before it, which required arbitration for "any dispute or claim arising under this partnership agreement" from the clause in *In re Hornbeck Offshore*, which required arbitration for "any dispute aris[ing] between [the parties]." *Id.* at 725. The *Coffman* court found that its arbitration provision was narrow because (1) it did not use broad language such as "relating to"; and (2) it limited the type claims that could be subject to arbitration by only including claims under the partnership agreement. *Id.*

Here, the arbitration clause is limited to a specific type of claim. Neither party has cited a case, nor has the Court found any, interpreting the breadth of the word "concerning." However,

---

[3] The current AAA commercial rules moved the standard arbitration clause to the preamble to the rules. Am. Arbitration Assoc., Commercial Arbitration Rules and Mediation Procedures (May 2, 2017) https://adr.org/sites/default/files/Commercial%Rules.pdf, at p. 8.

7

the Court need not determine the exact breadth of "concerning" because the parties limited the number of disputes by making limiting the scope of the arbitration provision to "interpretation." By choosing to arbitrate only matters involving contract interpretation, the parties chose a narrow arbitration provision. *United Offshore*, 899 F.2d at 409 (finding clause that required arbitration of claims "arising out of the interpretation" was narrow); *see also Beckham v. William Bayley Co.*, 655 F. Supp. 288, 291 (N.D. Tex. 1987) ("The parties' failure to use phrases or terms ordinarily included in an arbitration clause is evidence that they did not agree to arbitrate all the issues arising out of their business relationship."). Therefore, the Court finds that the arbitration clause is narrow and will analyze whether each cause of action falls within the narrow arbitration provision.[4]

## Unfair Competition

The Fifth Circuit requires proof of five elements on a false designation of origin claim under the Lanham Act:

> (1) A false or misleading statement of fact about a product;
> (2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers;
> (3) The deception was material, in that it is likely to influence the consumer's purchasing decision;
> (4) The product is in interstate commerce; and
> (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). To succeed on an unfair competition claim for false designation of origin under the Lanham Act, a plaintiff must prove that the false designation of origin is likely to cause confusion. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). The factors used by the Fifth Circuit in determining likelihood of

---

[4] This holding is consistent with the parties' apparent intent to limit the category of disputes subject to arbitration. The parties' 2007 agreement required arbitration for "a dispute concerning the interpretation or enforcement of the terms of this Agreement or any other matter concerning the business relationship between [Deer Registry] and DNAS." The current agreement requires arbitration for "a dispute . . . concerning the interpretation" of the Contract, a clearly narrower provision than previously agreed to.

8

confusion are: (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers. *Am. Rice, Inc. v. Prods. Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

In its supplemental brief, DNAS argues that this claim cannot be separated from the Contract because the Contract gave DNAS the right to the data that it used. Deer Registry argues that the Lanham Act claim does not depend on the Contract because it is based on statements made after the contractual relationship ended.

Here, Deer Registry can maintain its unfair competition claim independent of the Contract. It does not matter that the Contract may be used as evidence for this claim. *Coffman*, 161 F. Supp. 2d at 732; *see also Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250–51 (5th Cir. 1998). Consumers may be confused as to the origin of DNAS's "uninterrupted service" regardless of any rights DNAS may have obtained through the Contract. A similar scenario of confusion arose in *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distr. Co.*, 520 F.3d 393, 398 (5th Cir. 2008).

In *Schlotzsky's*, Sterling was granted a non-exclusive supply chain management contract by Schlotzsky's. *Id.* Although Sterling was a non-exclusive agent, it signed several contracts with various distributors and manufacturers claiming to be the "exclusive representative in the purchasing of products." *Id.* A jury found Sterling willfully committed false designation of affiliation, sponsorship, or approval with respect to Schlotzsky's commercial activities. *Id.* at 397. On appeal, Sterling argued that the Lanham Act did not apply to commercial activities. *Id.* at 398. The Fifth Circuit held that Sterling's misrepresentation as to its exclusive supply chain

management responsibilities was a misrepresentation that threatened Schlotzsky's goodwill with suppliers and confusion with franchisees. *Id.* It further held that Sterling used these misrepresentations in an effort to further Sterling's position in the marketplace and that these misrepresentations violated the Lanham Act. *Id.* (citing 15 U.S.C. § 1125(a)(1)).

The facts alleged by Deer Registry are similar. While DNAS may have some right to information by virtue of Contract provisions, its ambiguous representations to consumers that it can provide "uninterrupted service" have the potential of misleading consumers as to the origin of DNAS's information or its affiliation with or approval by Deer Registry. Because the unfair competition claim does not require the Contract, it does not fall under the scope of the narrow arbitration provision in this case.

<u>Misappropriation of Trade Secrets</u>

A claim for misappropriation of trade secrets requires: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. 18 U.S.C. § 1836(b)(1). Misappropriation is satisfied if the trade secret is acquired by a person who knows or has reason to know that the trade secret was acquired by improper means. *Id.* § 1839(5). Alternatively, misappropriation is satisfied if disclosure of the secret is made without express or implied consent by a person who used improper means to obtain the secret, or at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was improperly obtained or acquired under circumstances giving rise to a duty to maintain its secrecy. *Id.* "Improper means" includes breach of a duty to maintain secrecy, but does not include reverse engineering or independent derivation. *Id.* § 1839(6).

Oklahoma has adopted the Uniform Trade Secrets Act, which has similar elements to the federal act. *See* 78 Okla. Stat. tit. 78, §§ 85–95.[5] Misappropriation and improper means have the same definitions under the federal and Oklahoma trade secrets acts. *Compare* 18 U.S.C. § 1839 *with* 78 Okla. Stat. tit. 78, § 86.

Deer Registry's complaint relies on facts that DNAS misappropriated trade secrets in violation of the confidentiality and return of information provisions of the Contract (*See* Dkt. #19, Exhibit 1 at p. 14). In its supplemental brief, Deer Registry argues that the trade secret claim is appropriate for this Court because "contract provisions are not the exclusive mechanism for creating a duty not to use confidential information belonging to another person" (Dkt. #39 at p. 4). While this might be true in the abstract, it is not clear if it applies to this case. While Deer Registry claims that the only dispute for determination by the arbitrator is the interpretation of disputed Contract terms, it does not say whether the basis for its trade secret claim depends on Contract interpretation. Quite simply, the Court cannot determine if Deer Registry's claims are simply reformulations of its breach of contract, or if they are independent torts that fall outside of the arbitration provision.

Because arbitration clauses are creatures of contract, a court cannot require a party to arbitrate a dispute it did not agree to arbitrate. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *Neal*, 918 F.2d at 37. The Supreme Court in *Granite Rock* reaffirmed the need to resolve whether a dispute falls within the scope of an arbitration agreement without deviating from the parties' intent. *See Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 299–300 (2010). The court must look first to whether the party agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement. *Id.* As a result, the court "should not stay or refer

---

[5] Deer Registry alleges claims under Oklahoma law and does not dispute the Governing Law provision except as it relates to the scope of the arbitration provision and arbitrability. Therefore, the Court will apply Oklahoma law to the state law claims.

11

a matter to arbitration unless it determines that the dispute falls within the clause." *In re Hornbeck*, 981 F.2d at 754. At this time, the Court cannot make such a determination.

The Court denies DNAS's motion as to this issue at this time. The hearing on Deer Registry's application for preliminary injunction is currently set for May 17, 2017. The parties shall offer evidence of the basis for the trade secret claims at this hearing. If the Court is still not satisfied, limited discovery and an expedited trial on the issue of arbitration may be appropriate, according to the FAA. 9 U.S.C. § 4; *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 984 (10th Cir. 2014) (holding that the district court erred in ordering several rounds of discovery rather than a summary trial on arbitration issue); *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 780 (3d Cir. 2013) (holding that discovery, further motions, and a summary trial are appropriate when genuine issue of material fact exists as to arbitrability of certain issue).

<u>Constructive Trust</u>

A constructive trust is an equitable remedy that may be imposed against one who by wrongful act obtained or holds property that, in equity and good conscience, should not hold or enjoy. *Rural Water Dist. No. 5 Wagoner Cty. v. City of Coweta*, 202 F. Supp. 3d 1268, 1278 (N.D. Okla. 2016) (citing *Easterling v. Ferris*, 651 P.2d 677, 680–82 (Okla. 1982)). As an equitable remedy, a constructive trust is generally unavailable when the party has an adequate remedy at law. *Gaedeke Holdings VII, Ltd. v. Mills*, No. CIV-11-649-M, 2014 WL 347629, at *2 (W.D. Okla. Jan. 30, 2014) (citing *Robertson v. Maney*, 166 P.2d 106, 108 (Okla. 1946)).

Deer Registry pleaded constructive trust for wrongfully held trade secrets. Because this is a remedy for a claim that the Court has retained, this too should remain in the Court. DNAS has not advanced any argument as to why a constructive trust would be inappropriate for a trade

secret claim or why the remedy should be separated from the underlying claim. Therefore, the motion as to this issue is denied.

## Unjust Enrichment

Unjust enrichment is "a condition [that] results from the failure of a party to make restitution in circumstances where it is inequitable; *i.e.* the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006).

Both the Defend Trade Secrets Act and Oklahoma Uniform Trade Secrets Act allow a party to recover damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss. 18 U.S.C. § 1836(b)(3)(B)(i)(II); 78 Okla. Stat. tit. 78, § 88. For the same reasons that the Court retained the claim for a constructive trust, the Court should also retain the claim for unjust enrichment. Therefore, the motion as to this issue is denied.

## Injunctive Relief

The Court has retained jurisdiction over all of Deer Registry's claims, finding that they do not concern the interpretation of the Contract. Deer Registry's application for preliminary injunction relies on the above causes of action. Because the Court has found that the causes of action discussed above are not subject to arbitration, neither is the application for injunctive relief.

## **Motion to Stay**

In a subsequent motion, DNAS requests that the Court stay the action pending arbitration of Deer Registry's claims (Dkt. #31). In large part, DNAS re-asserts its arguments from the motion to dismiss as to why the claims before the Court fall within the arbitration clause. Deer

Registry responds that if a claim does not fall within the parties' arbitration clause, then the FAA does not require a stay. The Court declines to stay the action.

Section 3 of the FAA is inapplicable to non-arbitrable claims. *See* 9 U.S.C. § 3 (requiring stay of only the issues that are subject to arbitration); *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985) (holding that section 3 is not applicable when the issue is not subject to arbitration). Thus, the determination of whether to stay a non-arbitrable claim turns on the court's inherent authority to control its docket. The court's exercise of its inherent authority should be premised on "[t]he heavy presumption . . . that the arbitration and the lawsuit will each proceed in its normal course." *Girard v. Drexel Burnham Lambert, Inc.*, 805 F.2d 607, 611 (5th Cir. 1986). Generally, the moving party bears a heavy burden to show why a stay should be granted absent statutory authorization. *Coastal (Bermuda)*, 761 F.2d at 203 n.6 (citing *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d Cir. 1964)). The Fifth Circuit has articulated three factors to determine when a stay is appropriate: "1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration." *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004).

The Court holds that a stay is not necessary. DNAS has not advanced any argument to carry its heavy burden. The Court explained above that the operative facts relevant to Deer Registry's claims do not require interpretation of the contract. A finding in this Court based on facts independent of the Contract would not be inconsistent with any of the arbitrator's findings on these issues in arbitration. Finally, the arbitration will be completed by August 14, 2017. Trial in this case will be held in the March 2018 trial window. Thus, the litigation will not have a

critical impact on the arbitration. Therefore, the Court should not stay the claims before it. *See Coastal (Bermuda)*, 761 F.2d at 204 n.6 (quoting *Wick v. Atl. Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979)).

## Motion to Transfer Venue

DNAS also moves to dismiss or to transfer for improper venue. Deer Registry argues that DNAS's motion to compel arbitration is in violation of Local Rule CV-7(a). Deer Registry does not object to the portion of DNAS's motion regarding venue (Dkt. #19 at pp. 14–19). However, the Court *sua sponte* denies DNAS's venue motion, subject to re-filing. Local Rule CV-7(a) requires "each pleading, motion or response to a motion" to be "filed as a separate document, except for motions for alternative relief." E.D. Tex. Civ. R. CV-7(a). In this case, DNAS asserted two motions: a motion to dismiss on the arbitration provision and a motion to dismiss for improper venue. The motion regarding venue should be a separate motion because its relief is independent of the relief on the arbitration provision. Accordingly, the portion of DNAS's motion regarding venue (Dkt. #19 at pp. 14–19) is hereby denied, subject to re-filing.

## CONCLUSION

It is therefore **ORDERED** that Defendant DNA Solutions, Inc.'s Motion to Dismiss Amended Complaint and Compel Arbitration, or in the Alternative, to Transfer Venue to the Western District of Oklahoma (Dkt. #19) is hereby **DENIED**.

It is further **ORDERED** that Defendant DNA Solutions, Inc.'s Motion to Stay (Dkt. #31) is hereby **DENIED**.

The Court will hear additional facts and arguments on the basis of the trade secret claim at its hearing on Deer Registry's Application for Preliminary Injunction at 9 a.m. on Wednesday, May 17, 2017.

**SIGNED this 16th day of May, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE